## Commonwealth v. Farrar, Appellant.

Argued October 1, 1929. Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Edward Davis,* for appellant.

*Theodore Rosen,* Assistant District Attorney, and with him *John Monaghan,* District Attorney, for appellee.

OPINION BY BALDRIGE, J., November 22, 1929:

The defendant was indicted for and found guilty of a conspiracy to forcibly enter a dwelling house.

As an employe of a private detective agency, he was ordered to obtain possession of an automobile which had been leased to one, Morris Gardner, who had defaulted in his payments. The defendant invited a friend, not connected with the agency, by the name of Franklin, to accompany him and to drive the leased automobile, if he was successful in his mission. They failed to locate the car until about three o'clock the morning following the beginning of their search, when they found it in front of the house of Benjamin Abraham, where Gardner roomed.

The Commonwealth contended that Mr. and Mrs. Abraham were rudely awakened by violent knocking at the door and the ringing of their bell, which was accompanied by loud talking; that demands were made by the defendant to the Abrahams, who came to the front windows on the second floor, to open the door and to send down Morris Gardner, the lessee, or to deliver the keys of the car. As a result of this disturbance, the police were summoned and the defendant

and Franklin were taken to the police station and the arrest of the defendant followed.

The question involved in this appeal is whether there was sufficient testimony to support the charge of conspiracy. It was not contended by the Commonwealth that under the lease the lessor did not have the right to repossess itself of the car, so that the motive of the defendant, as its agent, and of Franklin, was entirely lawful.

The defendant and Franklin called at the home of the prosecutors at an hour that was undoubtedly inauspicious, and the defendant's conduct may have been disorderly, but we are dealing with the charge of conspiracy, which involves the unlawful action of two or more persons. The fact that Franklin was with the defendant on a lawful mission does not of itself justify the conclusion that the former was a party to the alleged violence of the defendant. There is no satisfactory evidence of any unlawful agreement or any concert of action between the defendant and Franklin actuated with a criminal intent necessary to constitute the crime of conspiracy.

According to the testimony of the Commonwealth, it was Farrar who rang the bell, banged on the door, and attempted to force it open. Both Mr. and Mrs. Abraham testified that it was Farrar who talked loudly and that he was the only one on the steps of the house. When the station house was reached, it was against the defendant only that Abraham desired to prefer charges. The uncontradicted testimony is that when the officers arrived at the Abraham's home, one of them rang the bell and the door was opened. All of the witnesses, except Abraham, testified that Franklin did not go into the house. But if we assume Abraham is correct and that all the other witnesses' recollections are defective, his entry was quiet and peaceable—not accompanied with any force or violence.

The only testimony involving Franklin, to any extent, was that of Benjamin Abraham who testified that after the four officers, who had been summoned by Mrs. Abraham, had arrived, that they and three men came into the house.

"Q. Four officers and three men in addition came into your house?

"A. That is correct.

"Q. Three in civilian clothes?

"A. Yes, and one tried to cross-examine me, and I said, 'Who are you to cross-examine me for this information?' He said, 'I am with him.' I said, 'That makes no difference, I want you to get out of the house,' his name was Ben Franklin, I found out since then."

This testimony might have raised, at most, a suspicion or possibility of an unlawful plan between the defendant and Franklin, but that is not enough: Commonwealth v. Stephens, 64 Pa. Superior Ct. 429; Commonwealth v. Gormley, 77 Pa. Superior Ct. 298. There certainly was not produced that clear and convincing evidence showing not only a unity of purpose, but also a wilful intent to do violence by Frankin: Ballantine v. Cummings, 220 Pa. 621. Those essential elements in the crime charged were not sufficiently proven.

The sixth assignment of error is sustained. The judgment is reversed and the defendant is discharged.